[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11902
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 29, 2010
JOHN LEY
CLERK

Agency No. A098-394-009


SANG KYU PARK,
HEE JUNG LEE,
JONG HYUK PARK,

                                                            Petitioners,


versus


U.S. ATTORNEY GENERAL,

                                                            Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 29, 2010)

Before BLACK, HULL and WILSON, Circuit Judges.

PER CURIAM:

Sang Kyu Park, his wife, Hee Jung Lee,[1] and their minor son, Jong Hyuk

Park ("Jong"), petition for review of the Board of Immigration Appeals' ("BIA")

order affirming the Immigration Judge's ("IJ") denial of their claims for

withholding of removal and relief under the United Nations Convention Against

Torture ("CAT").[2]  After review, we deny the petition for review.

Park, a citizen of South Korea, claimed a well-founded fear of future

persecution because of his membership in a particular social group.  Specifically,

Park claimed that if he returned to South Korea he would be jailed and fined for

failing to comply with South Korea's compulsory military service requirements.

According to Park's hearing testimony, he served in the South Korean Army

---

[1]Although Lee and Jong filed separate applications for asylum, withholding of removal and CAT relief, they did not challenge the denial of their claims before the BIA and do not raise their separate claims in this appeal.  Accordingly, Lee and Jong have abandoned their asylum, withholding of removal and CAT claims on appeal, and, in any event, we lack jurisdiction to consider them because of their failure to raise them before the BIA.  See Immigration and Nationality Act ("INA") § 242(d)(1), 8 U.S.C. § 1252(d)(1); Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

[2]On appeal, Park states that he does not challenge the IJ's denial of his untimely asylum claim.  Thus, the only claims before us are Park's claims of withholding of removal and CAT relief.  To the extent Lee and Jong assert derivative withholding of removal and CAT claims, the statutes and regulations governing withholding of removal and CAT relief do not create derivative rights.  Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007) (stating that "there are no derivative benefits associated with a grant of withholding of removal"); 8 C.F.R. § 208.16(c) (omitting mention of derivative benefits).  Accordingly, we deny Lee's and Jong's derivative claims of withholding of removal and CAT relief on that basis.

for 26 months from 1992 to 1994, but afterward failed to attend the required annual reserve training. Park stated that he received notices to report for training beginning in 2000 or 2001, but did not comply. Park then received warnings that he would receive a three- or five-year prison sentence or a $5,000 fine. No one ever attempted to collect a fine from him. In approximately 2003, the police visited Park a couple of times, but did not arrest him. In October 2003, Park received a final warning that, if he did not report for training, he would be sent to jail. Park entered the United States in May 2004.

The IJ and the BIA denied Park's withholding of removal claim based in part on a finding that he was not credible. Alternatively, the IJ and the BIA concluded that, even if credible, Park had not shown a well-founded fear of persecution. Specifically, the IJ and the BIA explained that (1) compulsory military service ordinarily is not a form of persecution, (2) Park did not claim a religious or ethical basis for his refusal to complete his reserve training and (3) Park admitted he would be punished the same as anyone else in South Korea for not fulfilling his military duty.

On appeal, Park argues that the IJ's adverse credibility finding is not supported by substantial evidence. To establish eligibility for withholding of removal to a country, an applicant must show that his "life or freedom would be

3

threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A); 8 U.S.C. § 1231(b)(3)(A). An applicant seeking relief from removal must establish eligibility by offering "credible, direct, and specific evidence in the record." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (quotation marks omitted).

Although an adverse credibility determination alone may support the denial of a withholding of removal claim, if the applicant produces evidence other than his testimony, the IJ must consider this evidence as well. Id. In making an adverse credibility finding, the IJ must be explicit, Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005), and must offer "specific, cogent reasons" for the determination. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006) (quotation marks omitted). In evaluating credibility, the IJ must consider the "totality of the circumstances," and all relevant factors, regardless of whether they go to the "heart" of the applicant's claim. INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii); Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1233 (11th Cir. 2006).[3]

---

[3]Although § 1158 governs asylum claims, 8 U.S.C. § 1231(b)(3)(C) provides that the IJ's credibility determinations for purposes of determining eligibility for withholding of removal are governed by § 1158(b)(1)(B). Park's withholding of removal claim is subject to the new

4

Furthermore, "[t]he weaker an applicant's testimony, . . . the greater the need for corroborative evidence." Yang, 418 F.3d at 1201; see also INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii) (explaining that, if the IJ concludes that the applicant should provide evidence that corroborates his testimony, the applicant must provide corroborative evidence unless he can show that he does not have it and cannot reasonably obtain it).

Here, the IJ and the BIA gave specific, cogent reasons for finding Park not credible.[4] Specifically, the IJ and the BIA both pointed out that Park was unable to answer specific questions about when he first failed to attend reserve training and how many sessions he missed, and he did not present reasonable corroborating evidence, such as the notices and warnings he received. The IJ noted that Park's wife, Lee, was unable to corroborate Park's testimony because she was unaware Park had failed to comply with his reserve duty obligations until after they came to the United States in 2004.

---

standards for evaluating credibility found in the REAL ID Act because his application was filed in 2008, after the REAL ID Act's amendments took effect on May 11, 2005. See REAL ID Act of 2005, Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305.

[4]The BIA affirmed the IJ's adverse credibility determination and agreed with the IJ's reasoning. Thus, we review both the BIA's decision and the IJ's reasoning supporting the adverse credibility determination. Xia v. U.S. Att'y Gen., 608 F.3d 1233, 1239 (11th Cir. 2010). Credibility findings are factual determinations we review under the substantial evidence test. Id. "To reverse the finding under that standard, we must conclude not only that the evidence supports a contrary finding, but that it compels one." Id. (quotation marks and brackets omitted).

The reasons given are supported by substantial evidence. During the hearing, Park could not recall when he first missed a reserve training session, although he was asked multiple times by his counsel. When asked how many times he attended training, Park replied "[a]bout six times. Three or four times." When the IJ asked which training sessions Park had missed, Park responded that he had "missed quite a few times," and "[f]our or five times" but could not supply any locations or dates. Park stated that there were so many sessions that he had forgotten. The IJ requested that Park be more specific in his testimony, as the missed training sessions were the crux of his claim, but Park was unable to provide more detail.

Furthermore, his wife Lee's testimony did not corroborate Park's testimony. Lee testified that she was unaware Park had not complied with his military duty until after she and Park came to the United States. Lee never saw any of the warnings or notices Park said were sent to their home annually and did not testify to seeing the police that, according to Park, came to the house to warn him. Finally, Lee estimated that Park had failed to report for reserve training "maybe 10, 15 times."

The documentary evidence also did not corroborate Park's testimony as to his missed reserve training. Park did not provide copies of the notices and

6

warnings he said he received or any other documents indicating that the South Korean government was aware that Park had not completed his military reserve training. Instead, Park produced evidence primarily in the form of background documents, such as passports and birth and marriage certificates, as well as news articles and country reports for South Korea.

Park's argument that the IJ relied on "minor detail" to discredit him is unavailing. First, as the IJ noted during the hearing, Park's failure to report for military reserve training was at the heart of his future persecution claim. In any event, after the REAL ID Act, the IJ may base a credibility determination on all relevant factors, regardless of whether they go to the heart of the applicant's claim. INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii). Park suggests that his lack of detail is understandable due to the fact that five years had passed. This explanation, however, does not compel a conclusion that Park was credible. See Shkambi v. U.S. Att'y Gen., 584 F.3d 1041, 1051 (11th Cir. 2009); Chen, 463 F.3d at 1233.

Park does not argue that other evidence in the record, without his discredited testimony, compels a conclusion that he had a well-founded fear of persecution. Because we conclude that the adverse credibility finding is supported by substantial evidence, we do not address the IJ's and the BIA's alternative

finding that, even if deemed credible, Park's testimony did not establish future persecution on a protected ground.

As to Park's CAT claim, the record also does not compel the conclusion that Park is entitled to CAT relief. Park provided no evidence that he would be tortured by the South Korean government for his failure to complete his military reserve duty. Although Park claims that he will be imprisoned and fined, the potential imprisonment and fine are lawful sanctions that do not constitute torture. See 8 C.F.R. § 208.18(a)(3) (excluding from the definition of torture any pain and suffering resulting from lawful sanctions, such as "judicially imposed sanctions and other enforcement actions authorized by law").

**PETITION DENIED.**